**STATE FARM LLOYDS INSURANCE COMPANY, Appellant,**

v.

**Adelfa MALDONADO and Curtis D. Robert, Appellees.**

No. 04–93–00046–CV.

Court of Appeals of Texas, San Antonio.

Sept. 18, 1996.

Rehearing Overruled Oct. 28, 1996.

Paul Dodson, White, Huseman, Pletcher & Powers, Corpus Christi, for Appellant.

Anthony F. Constant, Law Offices of Anthony F. Constant, Corpus Christi, L.H. Warburton, Jr., Perkins, Oden, Warburton, McNeill, Adami & Paisley, Alice, for Appellees.

## OPINION ON APPELLEES' AMENDED SECOND MOTION FOR REHEARING EN BANC AND APPELLANT'S MOTION FOR REHEARING

CHAPA, Chief Justice.

The panel opinion dated December 30, 1994, is withdrawn and the following opinion is substituted therefor. Appellees' amended second motion for rehearing en banc is granted. Appellees' motion for rehearing (to the panel) is denied as moot. Appellant's motion for rehearing, having been considered en banc on the court's own motion, is denied.

### I. BACKGROUND

Adelfa Maldonado sued Curtis Robert, Sr. for defamation because of statements made by Robert accusing Maldonado of being a thief and a prostitute. Maldonado had previously worked for Robert as a bookkeeper. The trial court rendered judgment in favor of Maldonado for $2,000,000 plus $127,672.35 in prejudgment interest. Robert and Maldonado then brought the present suit against State Farm seeking recovery for negligence and gross negligence, violations of the Insurance Code, breach of contract, and breach of the duty of good faith and fair dealing. After a jury trial, the trial court rendered judgment awarding Maldonado $1,536,-

355.70 [1] plus three times the interest on the prior judgment dating from September 18, 1992, until State Farm pays the policy limit of $300,000. The court awarded Robert $6,156,355.92. [2]

State Farm raises twelve points of error, complaining of insufficiency of the evidence to support the jury's answers to the liability and damage issues, error in the jury charge, and error in the calculation of damages. We modify and affirm in part, and reverse and render in part.

### II. FACTS

At the times relevant to this appeal, Robert was insured by State Farm. The applicable policy covers personal injury damages caused by an offense arising out of Robert's business as a certified public accountant. "Personal injury" includes injury arising out of slander. The policy excludes coverage for personal injury arising from slanderous statements made with knowledge of their falsity and personal injury "[f]or which the insured has assumed liability in a contract or agreement." The policy prohibits Robert from settling any claim against him without State Farm's permission. State Farm indicated to Robert at the outset of the litigation process, that it was handling his defense and that he should not become involved in the process. State Farm hired an attorney, Roland Leon, to defend Robert against Maldonado's claims. It also informed Robert of its reservation of rights due to some questions about coverage, including whether Robert made the statements with knowledge of their falsity and whether the statements arose from his business.

1. The trial court apparently calculated Maldonado's damages as follows: (1) the $300,000 policy limits plus $165,562.40 interest on the judgment equals $465,562.40 in actual damages; (2) the actual damages trebled equals $1,396,687.20; (3) attorneys' fees of 10% equals $139,668.70 (10% actually equals $139,668.72, but the court appears to have dropped $.02); (4) the trebled actual damages plus attorneys' fees equals the Maldonado damages of $1,536,355.70 (the sum is actually $1,536,355.90, but the $.20 difference appears to be a simple mathematical error which is contained in both the judgment and the Memo-

randum in Support of Plaintiffs' Motion for Judgment).

2. The trial court apparently calculated Robert's damages as follows: (1) Robert sustained actual damages, as a matter of law, in the amount of $1,865,562.40, which represents Maldonado's $2,000,000 judgment against him, plus interest, minus the policy limits of $300,000; (2) the actual damages trebled equals $5,596,687.20; (3) attorneys' fees of 10% equals $559,668.72; (4) the trebled actual damages plus attorneys' fees equals Robert's judgment of $6,156,355.92.

Attorney Leon testified at the trial of the present case that the underlying case against Robert was very serious due to the nature of the accusations he made about Maldonado (that she was a thief and a prostitute) and the fact that he published these accusations to highly respected and credible members of the community. Robert then made a bad case even worse by attempting to fabricate evidence that Maldonado had stolen from him. He manufactured a story in which Maldonado stole hundred dollar bills that had been marked with the initials of Robert's friend, John Swain. Robert conveniently still had possession of five marked bills. Handwriting experts who examined the bills determined that the initials were not written by John Swain. One expert concluded that he could not rule out Robert as having written the initials.

In Leon's opinion, the case against Robert, which had appeared bad from the start, became hopeless on October 28, 1991, when the parties took the depositions of Judge Terry Canales and his wife. Both Judge Canales and his wife testified that Robert had made the slanderous remarks about Maldonado. Judge Canales also testified that those remarks had influenced his decision not to consider Maldonado for appointment to the position of county auditor. It appears from the record that attorneys for both sides realized at least by October 28, 1991, that if the case went to trial, Robert would lose and Maldonado would likely be awarded damages in excess of the policy limits of $300,000. All of Robert's causes of action against State Farm stem from State Farm's failure to settle the suit with Maldonado. Our inquiry, then, must focus on the conduct of the parties in seeking settlement.

On September 25, 1991, Leon, the attorney provided to Robert by State Farm, strongly recommended that State Farm settle with Maldonado. Leon predicted that Robert would lose at trial and that a jury would award more than the $300,000 policy limits. On October 2, Maldonado's attorney, Stephen Boyd, spoke with Zeke Barrera, a State Farm claims specialist, during a deposition

break. Barrera asked Boyd what it would take to settle the case, and Boyd responded that it would take $300,000 from State Farm plus $1,000,000 from Robert's own pocket. Boyd asserted at trial that he also informed State Farm that his demand for $1.3 million would expire in thirty days. On October 30, Leon informed Robert that Maldonado had made a demand in excess of his policy limits and advised Robert to seek the advice of his personal attorney.

On October 31, State Farm made a written offer to settle for $50,000. Boyd regarded this offer as a joke and refused to respond. On November 11, Boyd wrote to Leon extending his demand for $1.3 million until November 15. Leon faxed this demand to State Farm on the morning of November 12.[3]

On November 15, Leon, Robert, and Robert's personal attorney, Richard Stone, met with Boyd to work out an agreement to protect Robert's personal assets. Prior to the 5:00 deadline, the four engaged in discussions about how to structure the settlement. In the meantime, Leon communicated with State Farm via telephone from Boyd's office regarding whether State Farm would accept the settlement offer. Once the deadline passed without acceptance by State Farm, Robert entered an agreement to pay Maldonado $1,000,000 from his own pocket and to assign his suit against State Farm to Maldonado. Maldonado agreed not to execute against any of Robert's personal assets except for insurance policies. Robert and Maldonado further agreed that Robert would be reimbursed $1,000,000 from any recovery against State Farm, and the two would split any remaining recovery evenly. A written agreement was signed prior to trial on November 25, and was modified in writing on May 1, 1992. The modified agreement states that Robert does not assign his causes of action against State Farm. Robert entered these agreements on the advice of his personal attorney, Stone, and his State Farm assigned attorney, Leon.

After the November 15 deadline had passed, State Farm asked Boyd for an extension of time to consider his offer. State

3. It appears from the record that the fax was sent after business hours on the 11th and was not received by Leon until the morning of the 12th. Leon promptly forwarded it to State Farm.

Farm was considering the offer, but because of the structure of the company, it was necessary to forward recommendations to settle from the local Corpus Christi office to a regional office in Austin to the home office in Bloomington. In any event, Boyd refused to extend the deadline. On November 22, State Farm offered its $300,000 policy limits. Boyd declined the offer.

On November 25, Robert gave Boyd a check for $1,000,000. The parties then proceeded to trial before the court. Leon testified that this was not a "full-blown" adversarial trial; he did not make any opening statement, cross-examine any witnesses, or offer any evidence for fear that he might jeopardize Robert's agreement with Maldonado. Maldonado introduced proof that Robert had published slanderous statements about her that caused her damages in the amount of $2,000,000. The trial court rendered judgment for that amount plus interest. Maldonado and Robert then brought the present excess-judgment suit against State Farm. Maldonado sought State Farm's $300,000 policy limits plus statutory penalties for failure to pay promptly after liability had become reasonably clear. Robert sought tort and statutory damages from State Farm for negligent and bad-faith failure to settle or attempt to settle the defamation case.

The trial court submitted each of these theories of liability to the jury. The jury found in favor of Maldonado and Robert on each theory, though it refused to find gross negligence or to assess exemplary damages.

## III. SUFFICIENCY POINTS

### A. STANDARDS OF REVIEW— SUFFICIENCY OF THE EVIDENCE

■ In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If there is any evidence of probative force to support the finding, the finding will

be upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

■ In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### B. COVERAGE

■ In point of error one, State Farm contends that the court erred in rendering judgment for Maldonado because there is legally or factually insufficient evidence to support the jury's finding that State Farm was liable to make payments under Robert's insurance policy. Maldonado was entitled to sue State Farm for recovery under the policy as a third-party beneficiary by virtue of her final judgment against Robert. *See State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex.1989); *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265–66 (Tex. 1969).

State Farm asserts that there is no policy coverage because (1) Robert's statements that Maldonado was a thief and a prostitute did not arise out of his business as a CPA; (2) Robert made the statements with knowledge of their falsity; (3) Robert's settlement with Maldonado forfeited his coverage; and (4) the judgment against Robert was not the result of an "actual trial." We will address each contention in turn.

1. *Statements arising out of Robert's business.*

■ The policy covers personal injury caused by an offense arising out of the insured's business. Robert's business was as a certified public accountant. There is evidence in our record that calling someone a thief or a prostitute is not part of the business of a CPA. This, however, is not the issue. The policy does not state that it covers only actions that are necessary to or customary in the insured's business. It

states that it covers actions "arising out of" the insured's business.

In the present case, there is evidence that Maldonado worked for Robert as a bookkeeper. The allegation that Maldonado was a thief was directly related to her position as a bookkeeper. Robert accused her of taking money from a safety deposit box to which she had access solely because of her position as bookkeeper. Robert's allegation that Maldonado was a prostitute does not appear to have any factual basis in her employment as a bookkeeper. But, this does not negate coverage for the allegations of theft. Also, the jury could have concluded that the "prostitute" allegation also arose from Robert's business because the only evidence of any relationship between Robert and Maldonado was as employer and employee. The jury could have inferred that both of Robert's statements about Maldonado arose from that business relationship.

After application of the standards of review recited above, we hold that there is legally and factually sufficient evidence that Robert's slanderous statements arose from his business.

2. *Robert's knowledge of the falsity of his statements.*

■ The policy excludes coverage for personal injury arising out of the publication of slanderous statements if done by the insured with knowledge that the statements were false.

There is evidence in the record from which the jury could have found that Robert knew at the time he made the statements about Maldonado that they were not true. For example, Robert testified that Maldonado was not a thief or a prostitute and that he had never thought she was. He also attempted to manufacture evidence to support his allegation that she had stolen from him. There is evidence that Robert had once told

Maldonado that he hoped things went badly for her. He may also have threatened her at her new place of employment. This evidence shows Robert's ill will toward Maldonado and supports an inference that he knew at the time he made the statements that they were false. The mere existence of evidence supporting State Farm's position, however, is not sufficient to entitle State Farm to relief.

When conducting legal sufficiency review, this court must consider only the evidence favorable to the jury's finding and disregard contrary evidence. *Davis,* 752 S.W.2d at 522. In conducting factual sufficiency review, we must assess *all* the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool,* 715 S.W.2d at 635.

The evidence in support of the jury's finding of coverage is that, at the time of the statements, Robert was suffering from a terminal illness and was taking excessive doses of a prescription drug. His behavior and appearance at that time were not normal. There is evidence from which the jury could have inferred that Robert's perception and judgment were distorted by the medication, thus preventing him from realizing the falsity of his statements. Also, there is evidence that the trial court in the defamation suit found that Robert did not have knowledge of the falsity of his statements.[4]

We must conclude that the implied finding that Robert was not aware of the falsity of his statements is supported by legally sufficient evidence. Further, that implied finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

3. *Settlement without consent.*[5]

■ State Farm contends that Robert forfeited his coverage by settling with Maldo-

---

4. As discussed below, we do not hold that State Farm is bound by the trial court's finding of fact on this issue. We simply note that it is some evidence supporting the jury's finding that Robert did not know his statements were false at the time he made them.

5. We acknowledge the supreme court's recent decision in *State Farm Fire & Casualty Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996), in which the court finds that a defendant's assignment of his claims against his insurer to a plaintiff is invalid under certain circumstances. While the controlling agreement between Maldonado and Robert is clearly not an assignment of rights, a *Gandy*

nado without its consent. It cites *Guaranty County Mut. Ins. Co. v. Kline*, 845 S.W.2d 810 (Tex.1992), as support for this argument. *Guaranty County*, however, is distinguishable. In that case, the insured (Kline) sued Fletcher for personal injuries sustained in an automobile accident. Kline settled his suit against Fletcher *and released Fletcher from any further liability.* Kline then sued Guaranty County, his own insurer, for underinsured motorist benefits. Kline's settlement with Fletcher barred his recovery under the policy because the settlement, in effect, bound the insurer by preventing it from asserting its contractual subrogation rights. *Id.* at 811.

In the present case, State Farm's rights were not adversely affected by Robert's agreement with Maldonado. Contrary to State Farm's assertion in its brief, the agreement did not resolve any issue in controversy between the parties. The evidence shows that Robert settled only his excess exposure. Robert did not agree to any judgment that would bind State Farm, nor did he preclude further litigation of the issues by admitting liability or the amount of damages. Thus, the "settlement without consent" clause of the policy does not apply.

4. *"Actual trial" of the defamation suit.*

■ The policy provides that a person may sue State Farm to recover on a final judgment against the insured "obtained after an actual trial." State Farm asserts that the $2,000,000 defamation judgment against Robert was not obtained after an actual trial, but was in the nature of a consent judgment to which State Farm had not agreed. In support of this assertion, State Farm points to evidence that Robert's attorney did not present any argument or conduct any cross-examination, and one witness's opinion that the hearing was a "prove-up." Again, however,

issue could potentially be raised because the effect of the agreement was to allow Maldonado to recover on Robert's causes of action against his insurer.

We, however, find that a *Gandy* issue has not been preserved or presented for our review. The only complaint raised by State Farm regarding the validity of the settlement agreement between Robert and Maldonado involves whether the agreement violates the insurance policy's settle-

the standards of review require that we consider the evidence in favor of the jury's implied finding that there was an actual trial.

■ "The actual trial of a case, as ordinarily understood by the legal profession, is the hearing in open court, leading up to the rendition of judgment, on the questions of law, if the case is disposed of on the questions of law, or on the questions of fact, if the final judgment is rendered on the facts." *Lawyers Lloyds of Texas v. Webb*, 137 Tex. 107, 110, 152 S.W.2d 1096, 1097 (1941); *see also Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 908 (Tex.App.— Houston [14th Dist.] 1994, writ denied) (actual trial in this context contemplates "a contest of issues leading up to a final determination by court or jury").

In *Emscor*, the court held that a hearing to obtain approval of a settlement agreement was not an actual trial. In that case, the only evidence heard by the trial court was the parties' respective understanding of the agreement. *Emscor*, 879 S.W.2d at 908. In fact, the judgment itself stated that the judgment was not to be construed as an admission of liability, but as a means used by Emscor to limit its exposure without admission of guilt. *Id.*

In the present case, the record shows that Robert and Maldonado appeared before a district judge together with their attorneys, evidence was presented to the court through the depositions of four witnesses and live testimony of two witnesses. The evidence was in regard to Robert's liability and Maldonado's damages. Clearly, the purpose of the proceeding was not to prove up a consent or settlement agreement. The court rendered judgment as to liability and damages after hearing and considering the evidence presented. These circumstances support a find-

ment without consent clause. The propriety of the agreement has not been contested. In *Gandy*, the court specifically stated that its holding applies in this case, *in pending cases in which complaint of an assignment has been preserved,* and to every such assignment executed after today. *It does not invalidate assignments to which an objection has not been preserved. Id.* at 720 (emphasis added). As such, the decision in *Gandy* is inapplicable in the present case.

ing that an actual trial occurred. *See Pioneer Cas. Co. v. Jefferson,* 456 S.W.2d 410, 412–13 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (actual trial where witnesses sworn, attorney for insured admitted liability, and judgment recites rendition after hearing evidence); *Gulf Ins. Co. v. Vela,* 361 S.W.2d 904, 908 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.) (actual trial where only evidence came from plaintiff and his doctor and court rendered judgment in favor of plaintiff).

We conclude that the evidence is legally and factually sufficient to support the jury's implied finding that there was an actual trial.

We have determined that the evidence supports the jury's implied findings on each of the coverage issues disputed by State Farm. Point of error one is overruled.

### C. MALDONADO'S DAMAGES

■ In point of error two, State Farm asserts that the trial court erred in rendering judgment for Maldonado because she did not obtain any jury finding on damages and her damages were not proved as a matter of law. As noted above, Maldonado is a third party beneficiary of the insurance policy by virtue of the judgment she obtained against Robert. The record conclusively establishes that Maldonado's judgment against Robert exceeds the policy limits. State Farm argues, though, that it is not bound by the damages awarded in this judgment because of Robert's settlement with Maldonado. We disagree. Maldonado's damages as stated in the underlying judgment are not related to her agreement with Robert. That agreement was that she would not execute on his assets in exchange for payment of $1,000,000. Further, the agreement does not involve any admission of liability or damages. Those issues were reserved for trial.

State Farm is not bound by the agreement between Robert and Maldonado and is not liable for the $1,000,000 payment. It is, however, bound by the liability and damage findings in the judgment which was obtained following an actual trial at which Robert was defended by his State Farm-hired attorney.

*See Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 400 (Tex.1967) (if the insurer conducts the insured's defense, it is bound by the material issues determined in that suit). Robert had not forfeited his coverage and State Farm had not withdrawn its defense.

The cases cited by State Farm to support its contention that it is not bound by the underlying judgment are distinguishable from the present case. For example, in *Cluett v. Medical Protective Co.,* 829 S.W.2d 822 (Tex.App.—Dallas 1992, writ denied), the insured refused the qualified defense offered by the insurer and entered an agreed judgment in favor of the plaintiff. The court held that the insurer and insured were not in privity on the issue of coverage and therefore the insurer was not collaterally estopped from challenging findings of fact and conclusions of law entered in the agreed judgment on this issue. *Id.* at 826. *Cluett* is distinguishable from the present case in a number of respects: (1) Robert did not refuse State Farm's qualified defense; (2) Maldonado's damages were established by an actual trial rather than an agreed judgment; and (3) State Farm has not been prevented from litigating the issue of coverage—coverage was the subject of jury question ten and also the subject of our discussion above.

Similarly, the insured in *Britt v. Cambridge Mut. Fire Ins. Co.,* 717 S.W.2d 476 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), rejected the insured's qualified defense and entered an agreement with the plaintiff. Pursuant to that agreement, the insured waived the formalities of a trial and the parties presented evidence before a court reporter without the presence of a judge. *Id.* at 478–79. The court held that the insurer was not bound by the resulting judgment because the insured failed to conduct a reasonable defense and colluded with the plaintiff to defraud the insurer. *Id.* 483. Unlike the insured in *Britt,* Robert never refused the defense offered by State Farm. Indeed, the State Farm-hired attorney represented him throughout these proceedings and through an actual bench trial.[6] While that

---

6. State Farm states in its brief that the judgment at issue in *Britt* was the result of a bench trial.

attorney may not have defended the suit as zealously as he could have, there is no evidence that he was prevented from doing so by Robert.

Finally, State Farm cites *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485 (5th Cir.1992), and *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.,* 896 F.2d 949 (5th Cir.1990), for the proposition that it is not bound by the underlying judgment. In *Enserch,* the court noted that, under Texas law, an insurer that breaches its duty to defend is bound by a settlement reached by its insured, but is not estopped from contesting coverage. 952 F.2d at 1493. As noted above, State Farm has not been prevented from litigating coverage in this case.

In *Olympia Wings,* the court held that an insurer that offers a defense is "not bound by an unreasonable settlement that is reduced to a consent judgment." 896 F.2d at 955. Again, as noted above, the underlying judgment in this case is not a consent judgment but was the result of an actual trial. Neither *Enserch* nor *Olympia Wings* applies in the present case.

We hold that State Farm is bound by the damages recited in the underlying judgment, which judgment was the result of an actual trial defended by the attorney hired by State Farm. Although State Farm and Robert were not in privity in that action in regard to the issue of coverage, they were in privity for purposes of establishing Maldonado's damages. Those damages exceeded the amount of the applicable policy limits.

Because the jury found that there is coverage under the policy, and we have upheld that finding, Maldonado is entitled to recover the policy limits of $300,000. Her contractual damages in this amount are established as a matter of law; no jury issue was necessary. Point of error two is overruled.

### D. STOWERS ACTION

■ In point of error six, State Farm contends that the court erred in rendering judgment for Robert because there is legally

or factually insufficient evidence to support the jury's finding that State Farm negligently failed to settle Maldonado's claims against Robert. Specifically, State Farm argues only that Robert cannot prevail on his *Stowers* claim because Maldonado never offered to settle her claim for an amount within the policy limits. The issue before us then is whether the evidence is legally and factually sufficient to support a finding that an offer was in fact made for settlement within policy limits. Accordingly, we will apply the legal and factual sufficiency standards of review as set out above. *See Davis,* 752 S.W.2d at 522 (defining legal sufficiency standard); *Pool,* 715 S.W.2d at 635 (defining factual sufficiency standard).

■ Texas law requires that insurers exercise "that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business" in response to a settlement demand within the policy limits. *American Physicians Ins. Exchange v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994) (hereafter cited as *A.P.I.E.*); *see also Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 314 (Tex.1994); *Ranger County Mut. Ins. Co. v. Guin,* 723 S.W.2d 656, 659 (Tex.1987). This principle derives from *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved), and governs Robert's claim for negligent failure to settle.

■ There are three prerequisites to the imposition of a duty to settle under *Stowers:* (1) a claim against the insured within the scope of coverage; (2) a demand within policy limits; and (3) "the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Soriano,* 881 S.W.2d at 314; *A.P.I.E.,* 876 S.W.2d at 849. A demand for an amount in excess of the policy limits, even if it is reasonable, does not trigger the *Stowers* duty to settle. *Soriano,* 881 S.W.2d at 314; *A.P.I.E.,* 876 S.W.2d at 849.

---

Considering that the judge was not even in the room when the evidence was presented, we do not construe the proceedings as a bench trial. In

any event, the proceedings in *Britt* are clearly distinguishable from the trial in the present case.

As discussed above, the jury determined that Maldonado's claim against Robert was within the scope of Robert's coverage under his policy with State Farm. Further, the evidence supports a finding that the demand made in this case amounted to a demand within policy limits for the purposes of Robert's *Stowers* action.

The record reflects that Maldonado's $1.3 million demand was directly communicated to representatives of State Farm and to Leon, the attorney hired by State Farm on Robert's behalf. The demand was made both orally and in writing. While the record contains no indication that the bifurcation of the demand was reduced to writing, we find nothing to support a contention that a demand within policy limits must be made in writing before the *Stowers* doctrine is applicable. The bifurcated nature of the demand was clearly communicated to all involved—$1 million from Robert himself and $300,000, or policy limits, from State Farm. Accordingly, the record supports a finding that everyone involved, including State Farm and Leon, understood the mechanics behind Maldonado's $1.3 million demand. That is, that an offer of a policy limits settlement was being made to State Farm if Robert would pay $1 million out of his own pocket. It is equally clear that the demand was reasonable given the likelihood and degree of Robert's potential exposure to a judgment well in excess of his policy limits. Attorneys on both sides of the case agreed that Maldonado's claim against Robert would result in, at the very minimum, a judgment in excess of policy limits and that the claim could potentially result in a multi-million dollar judgment. From the outset of discovery, Leon repeatedly informed State Farm of the risk involved in the case and recommended that State Farm settle with Maldonado. In fact, Leon communicated to State Farm that this case was the worst he had seen and that liability should be stipulated.

While all the time being advised of the high risk involved in the lawsuit, State Farm was aware that if Robert paid $1 million out of his own pocket, its liability would be limited to $300,000. Yet, State Farm did not inform Robert of this offer and give him an opportunity to create a situation in which policy limits could be tendered and accepted. In fact, Robert was instructed from the outset that State Farm would handle the claim and that he should not become involved. In essence, Robert was asked to trust State Farm while State Farm was cutting off possibilities of settlement. Maldonado's demand was not communicated to Robert until a month after it was made to State Farm and an extension of the deadline had been offered. In the meantime, State Farm made no further attempt to negotiate for a reasonable settlement within policy limits. State Farm's one attempt at negotiation resulted in a $50,000 offer, which Maldonado's attorney considered a joke.

Robert was eventually made aware of Maldonado's demand when Leon advised him that he stood to suffer a judgment well in excess of his policy limits and should, therefore, hire a personal attorney to assist him in protecting his assets. This was the first time Robert had actual notice that State Farm was perhaps not acting in his best interest while he left the negotiations to them. One day before the offer expired, Robert, on the advice of both Leon and his personal attorney, agreed to pay $1 million from his own pocket in order to protect his assets.

The next day, Leon, Maldonado's attorney, and Robert's personal attorney met to discuss settlement possibilities. It is uncontroverted that the purpose of this meeting was to settle the case. State Farm was in turn advised of Robert's willingness to pay the portion of the demand in excess of his policy limits. This left State Farm with a demand for $300,000, the limit of Robert's coverage.

Maldonado's demand of $1.3 million remained on the table. Robert's attorney had authority to offer $1 million from Robert on that date. Therefore, the only thing that prevented the case from being settled that afternoon was State Farm's refusal to tender policy limits.

There is no evidence that the State Farm representatives ever indicated to any of the attorneys involved with the case that they were seriously considering Maldonado's offer, but that they needed to go through the necessary hierarchial channels to get approv-

al. Such a situation is reasonable and it could have easily been conveyed when State Farm was contacted with the information that Robert was willing to pay the portion of the demand in excess of policy limits. However, the record reflects that the demand was refused with no explanation.

Only after the settlement deadline had passed did State Farm demonstrate an interest in settling for policy limits and indicate that additional time was necessary to obtain approval of the settlement from State Farm's home office in Bloomington. At this point, with the offer having been on the table for almost six weeks with no response from State Farm, Maldonado's attorney declined to extend the deadline.

We note that the present case presents an unusual factual situation. However, the supreme court, while not reaching the merits of the applicability of *Stowers* in such a circumstance, acknowledged that such a situation was feasible. *See A.P.I.E.*, 876 S.W.2d at 849 n. 13 ("... we do not reach the question of when, if ever, a *Stowers* duty may be triggered if an insured provides notice of his or her willingness to accept a reasonable demand above the policy limits, and to fund the settlement, such that the insurer's share of the settlement would remain within the policy limits.") We find little distinction between a demand such as the one made in the present case and a more traditional *Stowers* demand. In both cases, the demand to the insurer is limited to the coverage provided in the policy. As such, a demand such as the one in the present case places no additional burden on the insurer. If the insured is amenable to funding the portion of the demand in excess of policy limits, as he was in the present case, the demand to the insurer falls within those limits.

In finding that State Farm was negligent in failing to settle, the jury in this case impliedly found the specific elements of a *Stowers* action, namely that Maldonado's claim was within the scope of Robert's coverage, that a demand was made within policy limits, and that the demand was reasonable. The evidence in the record and the reasonable inferences stemming therefrom support the jury's implied findings on each of the

elements of Robert's *Stowers* claim. Point of error six is overruled.

 We further note the legal and factual sufficiency of the trial court's award of damages on Robert's negligence claim. The amount of the judgment levied against Robert in excess of policy limits is beyond contention. The judgment in Maldonado's case against Robert was before the trial court as a matter of record. As a result of State Farm failing to settle Maldonado's claim, Robert incurred a judgment against him, and was legally obligated to pay Maldonado $2,000,-000.00. The deduction of policy limits from that amount was proper as the cause of action is for damages *in excess of policy limits* and also because State Farm was contractually bound to cover Robert up to that amount.

For the same reason we deduct the policy limits from the $2,000,000.00 judgment amount, we must also deduct the amount of post-judgment interest that accrued on that amount until the date the trial court rendered judgment in the present case. State Farm was contractually bound to pay the judgment creditor interest on the full amount of any judgment against Robert. As such, Robert was not liable for the interest amount and should not recover that amount here. We affirm the damages awarded by the trial court on Robert's *Stowers* claim with the exception of the award of post-judgment interest on the underlying judgment.

### E. DUTY OF GOOD FAITH AND FAIR DEALING

In point of error eight, State Farm asserts that the court erred in rendering judgment for Robert because there is no evidence or insufficient evidence to support the jury's finding that State Farm knowingly breached its duty of good faith and fair dealing. The jury was instructed that a breach of the duty of good faith and fair dealing is established "when there is no reasonable basis for the delay in payment or when there is a failure on the part of the insurer to determine whether there is any reasonable basis for the delay."

■ The supreme court articulated the standard of care owed by insurers in relation to first-party claims in *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), and again in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex.1988) and *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 599 (Tex.1993). In first-party cases, the insurer breaches its duty of good faith and fair dealing by refusing to pay a claim where "(1) the insurer has no reasonable basis for denying or delaying payment of the claim or [7] (2) the insurer knew or should have known that there was no reasonable basis for denying or delaying payment of the claim." *Soriano*, 881 S.W.2d at 317; *see also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex.1994).

■ The first element "requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376 (Tex.1994). The second element involves a balancing of the insurer's right to reject an invalid claim and its duty to investigate and pay a valid claim. *Id.* Neither a bona fide dispute over the insurer's contractual liability nor an insurer's error about the factual basis for denial of the claim or the proper construction of the contract establishes bad faith. *Moriel*, 879 S.W.2d at 17–18.

The duty of good faith and fair dealing arises from the special relationship between the insured and the insurer. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279 (Tex. 1995). This special relationship is lacking, though, between a third-party claimant and the insurer. *Faircloth*, 898 S.W.2d at 279–80. Thus, it has been held that an insurer does not owe a duty of good faith and fair dealing to a third-party claimant. *P.G. Bell Co. v. United States Fidelity and Guaranty Co.*, 853 S.W.2d 187, 190 (Tex.App.—Corpus Christi 1993, no writ); *Bowman v. Charter*

General Agency, Inc., 799 S.W.2d 377, 380–81 (Tex.App.—Corpus Christi 1990, writ denied); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 566 (Tex.App.—Dallas 1990, writ denied); *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Similarly, at least one court has held that an insured does not have a claim for breach of the duty of good faith and fair dealing in the handling of a third-party claim. *Charter Roofing Co. v. Tri–State Ins. Co.*, 841 S.W.2d 903, 905–06 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *see also Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex.1994) (refusing to hold that duty of good faith and fair dealing extends to handling of third-party claims).

■ The case at bar involves a third-party claim rather than a first-party claim; it would appear that Robert does not have a claim for breach of the duty of good faith and fair dealing in this context. *See Charter Roofing Co.*, 841 S.W.2d at 905–06. We need not determine this issue, though, because the evidence to support Robert's recovery for a breach of this duty (if it exists) is legally insufficient.

The supreme court explained how to conduct legal sufficiency review in a bad faith case in *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex.1993): The reviewing court must focus on "the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith." *Id.* at 600.

The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim, and that it knew or should have known it had no reasonable basis for its actions. The evidence must relate to the tort issue of no reasonable basis for denial

---

7. The court in *Aranda* held that a claimant must prove absence of a reasonable basis for denying or delaying payment *and* that the insurer knew or should have known there was not a reasonable basis for denial or delay. *Aranda*, 748 S.W.2d at 213. The jury instruction in the present case stated the elements in the disjunctive.

Thus, the jury's finding of liability will be upheld if there is sufficient evidence to establish either that State Farm had no reasonable basis for delaying payment or that State Farm failed to determine whether there was any reasonable basis for the delay.

or delay in payment of a claim, not just to the contract issue of coverage.

*Id.*

As stated in *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373 (Tex.1994), legal sufficiency review requires that the appellate court give weight only to the evidence supporting the judgment for the insured. *Id.* at 376. "However, only after an appellate court has determined what potential basis an insurance company may have had for denying a claim can the court conduct a meaningful review of whether the insurer lacked a reasonable basis for denying or delaying the claim." *Id.*

Our record shows that State Farm's potential basis for denying or delaying Maldonado's claim was uncertainty as to coverage. In its reservation of rights letter—its earliest contact with Robert in regard to this claim—State Farm expressed coverage concerns relating to (1) whether the statements were intentional; (2) whether the statements arose from Robert's business; (3) whether the statements were made with knowledge of their falsity; and (4) whether the statements were made prior to the effective date of the policy.

There is evidence that State Farm sought and obtained information to support a reasonable belief that Robert's statements were made intentionally and with knowledge of their falsity. For example, Maldonado's pleadings asserted that Robert acted intentionally, with malice, and with knowledge of the falsity of the statements. These allegations were not removed from Maldonado's pleadings until the day of trial. Also, as late as November 11, 1991, Maldonado's attorney sent Robert's attorney a letter in which he stated, "After a careful examination of the liability issues in this case, it is very hard to imagine that the defamatory comments made by the Defendants was [sic] not intentional, negligent or without malice and intent to harm my client." State Farm was also aware that Robert had exhibited feelings of ill will toward Maldonado which could support an inference that Robert slandered her intentionally. Finally, State Farm had reason to believe that Robert had fabricated evidence in an attempt to bolster his allega-

tion of theft. It investigated Robert's explanation of the theft by hiring a handwriting expert to analyze the initials placed on the bills ostensibly by John Swain. The expert determined that the initials were not written by Swain, but could not exclude Robert as having written them. This information indicates an attempted cover-up, which supports an inference that Robert was aware of the falsity of his statement.

The evidence arguably supporting a finding of bad faith in the present case is that the attorney hired by State Farm to represent Robert informed State Farm well before the trial date that the allegations against Robert were very serious, Robert would probably lose at trial, and that a jury verdict would probably greatly exceed the policy limits. This does not, however, cast significant doubt on State Farm's reliance on information indicating Robert's knowledge of the falsity of his statements and on Maldonado's own assertions that the statements were made with knowledge of their falsity. *See Dominguez,* 873 S.W.2d at 377 (insured's evidence did not cast doubt on insurer's reliance on other information). The issue of whether Robert was aware of the falsity of his statements was not determined until the jury verdict in the present case. As noted above, there was evidence that would have supported a jury verdict in either direction on this issue. While the jury ultimately determined that Robert's statements were covered under the policy (and, thus, that Robert did not know of the falsity of his statements), and we have upheld that determination, State Farm's error as to coverage does not rise to the level of bad faith. *See Moriel,* 879 S.W.2d at 17–18.

Appellees contend that State Farm is estopped from relying on the exclusion for statements made with knowledge of their falsity because the trial court in the underlying suit made a finding of fact that "Robert did not have knowledge of the falsity of his statements." As noted above, if an insurer conducts its insured's defense, it is bound by the material issues determined in that suit. *Massachusetts Bonding and Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d at 400. Appellees urge that the "no knowledge of

falsity" finding was material to the underlying suit because it formed the basis for denying punitive damages. But Maldonado's live pleadings at the time of the underlying judgment did not request any award of punitive damages. Therefore, the finding of fact is not material to that judgment and State Farm is not bound by it.

Appellees failed to sustain their burden of proving that State Farm had no reasonable basis for delaying payment of the claim or that it failed to determine whether there was a reasonable basis for delay. *See Dominguez,* 873 S.W.2d at 376. We conclude that there is no evidence of a breach of the duty of good faith and fair dealing. Point of error eight is sustained.

## F. VIOLATION OF INSURANCE CODE

■■■ In point of error five, State Farm argues that the court erred in rendering judgment for Maldonado because there is legally or factually insufficient evidence to support the jury's finding that State Farm knowingly failed to promptly and equitably pay the judgment in favor of Maldonado when liability to her under the policy was reasonably clear. State Farm argues under this point that Maldonado has no rights against Robert's insurer under the Insurance Code.

A third party does not have standing to seek recovery from an insurer under article 21.21. *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147 (Tex.1994). Insureds are given a cause of action for unfair claims settlement practices against their insurers because of the special relationship between the two. *Id.* at 149. A suit by a third party to the contract lacks this special relationship. *Id.* Thus, a third party "has no basis upon which to expect or demand the benefit of extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds." *Id.* Maldonado has no standing

to recover from State Farm under article 21.21. Point of error five is sustained.

■■■ In point of error seven, State Farm contends that the court erred in rendering judgment for Robert because there is no evidence or insufficient evidence to support the jury's finding that State Farm knowingly engaged in an unfair or deceptive act or practice. "Unfair or deceptive act or practice" was defined in question three to the jury as "Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of a claim when liability has become reasonably clear; or failing to process a claim in good faith."

While the supreme court held in *Watson* that a third party cannot sue an insurer for unfair claims settlement practices under article 21.21 of the Insurance Code, it also held that claims for unfair claims settlement practices brought by an insured against its insurer are still governed by *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 132 (Tex.1988). *Watson,* 876 S.W.2d at 149. The court in *Vail* specifically held that an insured may sustain a cause of action under the Insurance Code against its insurer for "not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear" and for failing to process a claim in good faith. *Vail,* 754 S.W.2d at 133, 135. Thus, we must examine the evidence to determine whether it supports the jury's affirmative answer to question three.

State Farm cannot be liable under the first definition of "unfair or deceptive act or practice" for not attempting to effectuate a settlement unless its [8] liability was reasonably clear. If State Farm had a reasonable basis for denying or delaying payment on the claim, then its liability could not have been reasonably clear. Similarly, Robert's asser-

---

8. The jury instruction states "when liability has become reasonably clear" without establishing whose liability is in issue. In this case, for example, it could refer either to Robert's liability to Maldonado or State Farm's liability under the policy. Section 4 of article 21.21, from which the jury instruction derives, makes clear that the liability at issue is that of the insurance company

on the policy. It defines unfair settlement practice as "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which *the insurer's* liability has become reasonably clear." TEX. INS.CODE ANN., art. 21.21, § 4(1)(a)(ii) (Vernon Supp.1996) (emphasis added).

tion that State Farm. failed to process the claim in good faith is based on State Farm's alleged failure to settle with Maldonado. Again, State Farm would have had no duty to settle with Maldonado unless and until its liability on the policy was reasonably clear. Thus, this court's review of the sufficiency of the evidence to support the jury's answer to question three is indistinguishable from our analysis above of the sufficiency of the evidence to support the finding of a breach of the duty of good faith and fair dealing. For the reasons stated above, we hold that there is no evidence to support the implied finding that State Farm's liability had become reasonably clear. *See Charter Roofing Co. v. Tri–State Ins. Co.*, 841 S.W.2d 903, 906–07 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (same evidence that defeats recovery for breach of the duty of good faith and fair dealing defeats recovery for alleged violation of the Insurance Code). Thus, State Farm is not liable to Robert under the Insurance Code. *See Progressive County Mut. Ins. Co. v. Boman*, 780 S.W.2d 436, 440–41 (Tex. App.—Texarkana 1989, no writ) (no recovery under Insurance Code unless insurer's liability is reasonably clear). Point of error seven is sustained.

## IV. MISCELLANEOUS POINTS

### A. JURY INSTRUCTION ON AGENCY

■ In point of error three, State Farm asserts that the trial court erred in instructing the jury that "whenever these questions ask about the conduct of State Farm, the question includes Roland Leon and his law firm." State Farm argues that this instruction allowed the jury to conclude that Leon's participation in negotiating the agreement between Robert and Maldonado constituted State Farm's consent. We need not determine whether the instruction was erroneous because we hold that the error, if any, was not reasonably calculated to cause and probably did not cause rendition of an improper judgment. *See* TEX.R.APP. P. 81(b)(1). As discussed above, the agreement between Robert and Maldonado did not bind State

Farm and was not a "settlement agreement" for purposes of the policy condition. Thus, whether State Farm consented to that agreement does not affect the issue of coverage. Point of error three is overruled.

### B. JURY ISSUE ON COLLUSION

In point of error four, State Farm asserts that the trial court erred in refusing to submit a jury issue inquiring whether the agreement between Robert and Maldonado was collusive or made in bad faith. State Farm has wholly failed to brief this point, providing neither argument nor authority in its support. *See* TEX.R.APP. P. 74(f). Nothing is presented for our review. Further, as discussed above, the agreement between Robert and Maldonado was not binding on State Farm; whether it was reached in bad faith is not material to the present case. Point of error four is overruled.

### C. INTEREST

In point of error twelve, State Farm asserts that the trial court erred in its award of interest. State Farm first complains that the September 28, 1992, judgment erroneously awards Maldonado interest accruing at 18% per annum pursuant to article 21.55 of the Insurance Code. Our record has been supplemented with a judgment signed January 27, 1993, which awards interest at the rate of 10% per annum. State Farm agrees that this judgment renders moot its complaint regarding the rate of interest.

State Farm also complains that the judgment erroneously awards interest on punitive damages. Because we have held that neither Robert nor Maldonado is entitled to recover punitive damages, we need not address the merits of this point.

In the panel opinion dated December 30, 1994, this court determined that the judgment erroneously awarded post-judgment interest on the entire amount of the underlying judgment rather than on the $300,000 State Farm was obligated to pay.[9] State Farm did

---

9. The panel opinion erroneously recites that the amount of Maldonado's judgment against Robert is $1,536,355.90. This is actually the amount of Maldonado's judgment against State Farm (actual damages trebled plus attorneys' fees). Her

not raise this complaint in the trial court or assign it as error in this court. The error, if any,[10] is not properly preserved or presented in this court; we will not disturb the trial court's award of post-judgment interest.

## D. POINTS NOT ADDRESSED

Because of our disposition of the points of error discussed above, we need not address the merits of points of error nine (sufficiency of Robert's evidence of damages), ten (sufficiency of the evidence showing intentional conduct), or eleven (double recovery of damages between Robert and Maldonado).

## V. CONCLUSION

For all the reasons stated above, the judgment of the trial court is reversed insofar as it awards Robert recovery against State Farm for breach of good faith and fair dealing and for violations of the insurance code; judgment is rendered that Robert take nothing on his contractual and statutory claims. The judgment is affirmed insofar as it awards Robert recovery against State Farm for negligence; the judgment is modified that Robert recover actual damages of $1,700,000.00 from State Farm (Maldonado's $2,000,000 judgment against Robert minus the policy limits of $300,000), plus post-judgment interest in the amount of 10% per annum from the date judgment was rendered by the trial court in the present case.

The judgment is also reversed insofar as it awards extra-contractual damages to Maldonado; judgment is rendered that Maldonado takes nothing on her extra-contractual claim. The judgment is affirmed insofar as it awards contractual damages to Maldonado; the judgment is modified to reflect actual damages awarded to Maldonado in the amount of $465,560.40 ($300,000 policy limits plus interest on the underlying judgment until the date judgment was rendered by the trial court in the present case), plus all inter-

est that accrues on the full amount of the underlying judgment from the date the trial court rendered judgment in the present case, until the date State Farm pays both that interest and the actual damages.

Concurring and dissenting opinion by RICKOFF, J., joined by GREEN and DUNCAN, JJ.

RICKHOFF, Justice, concurring and dissenting.

As noted by Justice David Peeples in the panel opinion previously issued in this cause, "[t]he salient issue in this excess-judgment case is whether under Texas law an adjudicated defamer (appellee Curtis Robert) may profit from his defamation by recovering millions of dollars from his liability insurer (appellant State Farm)." While we concur with the majority's reversal and rendition of judgment as to Robert's insurance code and breach of duty of good faith and fair dealing claims, we respectfully dissent from the remainder of the majority's judgment and, instead, would render a take-nothing judgment against both Maldonado and Robert as to all claims. Specifically, we cannot agree that Maldonado was entitled to recover contractual damages under the policy because: (1) there is no evidence that Robert was unaware of the falsity of his defamatory statements; (2) there is no evidence of an actual trial of the underlying defamation claim; and (3) there is no evidence of damages. In addition, we disagree with the majority's conclusion that the evidence was sufficient to support the jury's finding that State Farm negligently failed to settle Maldonado's claims against Robert because: (1) there is no evidence of a settlement demand within policy limits; and (2) there is no evidence of damages.

Robert had been a well-regarded CPA who became terminally ill with a disease that

judgment against Robert was for $2,127,672 (actual damages plus prejudgment interest).

10. A similar clause was addressed in *Maryland Ins. Co. v. Head Indus. Coatings and Serv., Inc.*, 906 S.W.2d 218 (Tex.App.—Texarkana 1995, no writ). The insurance contract in that case obligated the insurer to pay "all interest on the

entire amount of any judgment" until the company paid or tendered its policy limits. *Id.* at 238. This interest on the entire underlying judgment was held to be "part of the policy benefits [the insurer] is obligated to pay," even though the court had held that the insurer was not liable to pay the entire underlying judgment. *Id.*

affected his nervous system. Fearing death, Robert began ingesting excessive doses of medication in a desperate search for a cure. Other distinguished community leaders, like Judge Canales and his wife, were unaware of Robert's condition. They heard the unusual comments by Robert that Maldonado, his former bookkeeper, was a thief and a whore, along with outrageous remarks, like his threatening to machine-gun everyone at the Brooks County courthouse. Apparently, the out-of-character threat made the slander suspect to some, but not to all.

Maldonado consulted a lawyer, who agreed to represent her in suing the then terminally-ill Robert for the statements he made about her in exchange for forty-five percent (45%) of her recovery. They sued Robert for making the defamatory statements in bad faith and with malice and for intentionally and negligently causing Maldonado mental distress.

State Farm hired an attorney, Roland Leon, to defend Robert; however, State Farm told Robert there were questions as to whether his policy provided coverage for his statements. Specifically, they questioned whether the statements arose out of Robert's business and were made with knowledge of their falsity. Nevertheless, State Farm explained that Robert was required to cooperate with Leon, and any settlement without State Farm's consent or an agreed judgment entered into by Robert would violate the terms of the insurance policy and result in Robert losing coverage.

Leon told Robert from the outset that his policy limit was $300,000. Leon later advised Robert that he should consult his own personal attorney after Maldonado made a settlement demand for $1.3 million, $1 million more than the potential policy coverage.

On November 11, Maldonado's attorney gave Leon four (4) days to respond to his written demand for $1.3 million. In order to authorize the payment of the policy limits in this case, State Farm had a process for review which ultimately required approval of an Austin credit committee's recommendation by State Farm representatives in its home office in Bloomington, Illinois. All requests by State Farm for an extension of this deadline were summarily denied.

On November 15, minutes after the deadline passed, Leon, Robert's personal attorney and Maldonado's attorney made a deal.[1] Robert was required to pay $1 million of his own money to Maldonado in return for her agreement not to levy against any of Robert's personal assets other than any proceeds he recovered from State Farm in excess of $1 million. Robert further agreed to pay Maldonado one-half of any such proceeds recovered from State Farm which exceeded $1 million up to an amount equal to the judgment entered against him.

More importantly, the agreement between Robert and Maldonado was contingent upon the entry of a judgment for Maldonado against Robert. So, Robert's personal attorney, Leon and Maldonado's attorney went before a judge to prove up Maldonado's claim. Not surprisingly, the trial court found Robert's statements were slanderous and awarded Maldonado $2 million in damages.

Using this judgment against Robert as a stepping stone, Maldonado and Robert then brought the action from which this appeal is taken against State Farm seeking recovery for negligence and gross negligence, violations of the Insurance Code, breach of contract and breach of the duty of good faith and fair dealing. After a jury trial, the trial court rendered a judgment awarding Maldonado $1,536,355.70 plus three times the interest on the prior judgment dating from September 18, 1992, until State Farm pays the policy limit of $300,000. The judgment awarded Robert $6,156,355.92.

## A. CONTRACTUAL COVERAGE

## 1. KNOWLEDGE OF FALSITY OF STATEMENTS

As the majority states, the policy in the instant case excludes coverage for personal

---

**1.** Leon's testimony suggests he concluded his client would not be well received by a local jury since he was a wealthy Anglo employer who had impugned the morals of a Hispanic female, and the jury would not excuse his behavior due to his illness. He was partially correct. The illness would not excuse the behavior; however, if it was believed to be the reason for his behavior, it would mitigate the damages recoverable. *See Eidinoff v. Andress,* 321 S.W.2d 368, 371 (Tex. Civ.App.—El Paso 1959, writ ref'd n.r.e.).

injury arising out of the publication of slanderous statements if done by the insured with knowledge that the statements were false. In determining the evidence to be legally sufficient to support the finding that Robert did not have knowledge of the falsity of his statements, the majority infers that Robert's perception and judgment were distorted from the evidence that Robert was ingesting excessive doses of medication. Based on this first inference, the majority then further infers Robert did not make the statements with knowledge of their falsity. The only other evidence to support the finding that Robert did not have knowledge of the falsity of his statements in the instant case was the trial court's finding regarding that issue in the underlying defamation suit.

Neither the stacked inference nor the trial court's finding in the underlying suit, however, constitutes legally sufficient evidence. We will address each item of evidence separately.

### a. Stacking of Inferences

The stacking of inferences is not permissible under a no evidence review. *See generally* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 365 (1960); *see also* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1041, 1134–35 (1993). The basis for this rule is the impermissibility of establishing a vital fact by piling inference upon inference. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex.1968). "Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue." *Texas Sling Co. v. Emanuel*, 431 S.W.2d 538, 541 (Tex.1968) (citing *Fort Worth Belt Ry. v. Jones*, 106 Tex. 345, 166 S.W. 1130 (1914)); *see also Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791, 794 (1955).

The majority infers from the evidence that Robert was ingesting excessive doses of med-

ication and acting out-of-character that his perception and judgment were distorted by the medication. The majority then infers that this distortion in perception and judgment prevented Robert from realizing the falsity of his statements. This is inference stacking in violation of the aforementioned rule and does not support a finding that Robert was unaware that his statements were false.[2]

### b. Trial Court Finding in Underlying Judgment

The second item of evidence the majority relies upon to support their conclusion that the evidence was legally sufficient to show an absence of knowledge of falsity was the trial court's finding in the underlying defamation action. This evidence, however, should not be considered in light of the Texas Supreme Court's recent decision in *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (1996).

In *Gandy*, the Texas Supreme Court without dissent discussed the dangers arising from arrangements between plaintiffs and insured defendants such as covenants not to execute. *Id.* at 711–13. First, the Court noted that such arrangements did not end the litigation but actually prolonged it. *Id.* at 711–12. Litigation is prolonged because the entire purpose of such arrangements is to find a means to recover against the insurer. *Id.* This danger clearly resulted from the arrangement in the instant case which expressly contemplated additional litigation against State Farm and provided for a division of any proceeds recovered therefrom.

A second concern expressed by the Court in *Gandy* regarding these types of arrangements is their tendency to distort the litigation that follows. *Id.* The settlement provides a disincentive for the insured to protect his position in the underlying action and, in some instances, results in a complete shifting of positions. *Id.* at 711–13. In the instant case, Leon was relegated to the role of a passive observer at the underlying trial in his

---

2. We note that Maldonado's demand letter dated November 11, 1991, states that "it is very hard to imagine that the defamatory comments made by the Defendants was not intentional, negligent or without malice and intent to harm my client."

Having made such an assertion, it is difficult for us to comprehend Maldonado's struggle to understand the reason State Farm appropriately questioned its coverage.

efforts to protect his absent client's interest. No mitigating evidence as to Robert's illness was presented nor was Robert called upon to testify, as he did in the instant case, that he either never made such statements or he does not recall making such statements because they were not true. Thus, the arrangement between Maldonado and Robert distorted the judgment rendered in the defamation action by creating a disincentive to Robert's presentation of the best case possible to defend against the claims.

Finally, the Court in *Gandy* expressed a concern that these types of arrangements permit parties to take positions that appear contrary to their natural interests for no other reason than to obtain a judgment against the insurer. *Id.* at 712–13. Thus, the parties collude in a directed effort to take advantage of the insurer, and "the result is worse than if the parties had not settled." *Id.* at 714; *see also Employers Nat'l Ins. Co. v. Dalros*, 1994 WL 81435, at *11 (Tex. App.—San Antonio Mar. 14, 1994) (Rickhoff, J., dissenting) (discussing failure to treat insurers as equal litigants and unfairness in imposing greater burdens on insurers).

Assuming the majority is correct in their footnote reference to *Gandy* that State Farm did not preserve the issue as to the validity of the arrangement under public policy considerations, this does not entitle the majority to ignore the Texas Supreme Court's unanimous decision in *Gandy* and all of its implications. The Court in *Gandy* repeatedly announced its concerns regarding these types of arrangements and their pernicious effect on an underlying judgment, and these policy statements cannot and should not be ignored. *See id.* at 711–13 Apart from announcing the test applicable in determining the validity of such arrangements, the Court in *Gandy* also held that "in no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." *Id.* at 714. Furthermore, the Court expressly disapproved "the con-

trary suggestion in dicta in *Employers Casualty Company v. Block*, 744 S.W.2d 940, 943 (Tex.1988), and *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 954 (5th Cir.1990)." *Id.*

While the majority concedes the trial court's finding was not binding, it must rely on that finding in order to conclude the evidence is legally sufficient to support the jury's finding that Robert did not know his statements were false at the time he made them.[3] Given the considerations announced in *Gandy*, the majority's reliance is misplaced. While *Gandy* only directly addresses the admissibility of the judgment as evidence of damages, we are equally convinced that the Texas Supreme Court would extend the rule to trial court findings where the underlying trial was not fully adversarial and the insurer was prevented from presenting evidence to counter such a finding. Therefore, we would hold that there was no evidence that Robert was unaware of the falsity of his statements.

## 2. ACTUAL TRIAL

The majority also contends the evidence was legally and factually sufficient to support the jury's implied finding of an actual trial. This implied finding was necessary because the policy provided State Farm could only be sued to recover the underlying judgment if it was obtained after an actual trial. In support of its conclusion, the majority relies on the fact that "Robert and Maldonado appeared before the district judge together with their attorneys" and "evidence was presented to the court in regard to liability and damages through the deposition of four witnesses and live testimony of two witnesses."

The majority is correct in their brief synopsis of the trial events. Maldonado's attorney introduced the deposition testimony of Judge Canales, his wife and the county auditor (Maldonado's supervisor) regarding Robert's statements. In addition, Maldonado's former employer, a CPA, testified that Maldonado could have been damaged by at least $2 million. Maldonado also testified it would take at least $2 million to compensate her.

---

**3.** Since the majority's reliance on the stacked inference is impermissible, the only other evidence relied upon by the majority is the trial court's finding.

This synopsis does not, however, take into account what did not occur.

No objections were made, no cross-examination was undertaken, and no defense was presented. Indeed, Leon testified he requested Robert not to be present at the trial and took no action because he was afraid Robert's presence or any action on his part could have jeopardized the agreement with Maldonado. In fact, if Leon had presented evidence, the court might have concluded that Robert was not competent to agree to pay such a large sum to Maldonado or, at the very least, that his illness mitigated the recoverable damages.[4] *See Eidinoff,* 321 S.W.2d at 371.

The most determinative feature of this "trial" was the trial court's refusal to allow State Farm to intervene in the suit. As a result, State Farm's attorney was expressly denied permission to cross-examine any witnesses. Thus, Leon refused to cross-examine, and State Farm's attorney was prevented from doing so.

Although the Texas Supreme Court in *Gandy* did not expressly hold that for purposes of determining coverage in these types of cases an actual trial means a fully adversarial trial, this can be implied from the Court's decision. As the Court concluded, an insurer's liability should be litigated on the strength of the plaintiff's claims as the insured's assignee rather than on the generosity of the defendant insured's concessions. *Gandy,* 925 S.W.2d at 719. Leon admitted that the underlying judgment in the instant case did not result from an adversarial situation. This is supported by the absence of objections, the absence of cross-examination, and the insured's failure to present a defense or any mitigating evidence. Therefore, we would conclude that there is no evidence to support the jury's finding that there was an "actual trial," which is implicitly defined by the Texas Supreme Court in *Gandy* to mean a fully adversarial trial. *See also Emscor*

*Mfg., Inc. v. Alliance Ins. Group,* 879 S.W.2d 894, 908 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (judgment following actual trial contemplates more than "prove up" or "friendly suit"); *Wright v. Allstate Ins. Co.,* 285 S.W.2d 376, 379–80 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.) (actual trial presupposes contest of issues).

### 3. EVIDENCE OF DAMAGES

With respect to State Farm's second point of error, the majority holds "State Farm is bound by the damages recited in the underlying judgment, which judgment in this case is not a consent judgment but was the result of an actual trial." In *Gandy,* the Texas Supreme Court expressly held that "in no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignees." *Id.* at 717. In addition, the Court disapproved the dicta in *Block,* 744 S.W.2d at 943, wherein it was held that the insurer was "barred from collaterally attacking the agreed judgment by litigating the reasonableness of the damages recited therein." *Id.* Since there was no evidence presented on the issue of damages other than the underlying judgment, which the Court held inadmissible as evidence in *Gandy,* we would hold the evidence to be legally insufficient to support the jury's damage finding.

### B. STOWERS ACTION

### 1. NO DEMAND WITHIN POLICY LIMITS

As the majority correctly recites, one of the prerequisites to the imposition of a duty to settle under *Stowers*[5] is a demand within policy limits. *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 314 (Tex.1994). The majority contends that everyone under-

---

4. During the subsequent jury trial, Robert, perhaps due to his illness, could not recall important testimony given the day before. But, while the court hearing the slander action knew the comments were made and that they were injurious, Robert's illness was kept from the court so no mitigation could have been applied.

5. *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929, holding approved).

stood Maldonado's offer to settle for $1.3 million as bifurcated, requiring State Farm to pay its policy limits of $300,000 and Robert to personally pay the other $1 million. Even accepting the majority's presumption that everyone understood this from the record before us, the demand was nevertheless for $1.3 million, which exceeds the policy limits by $1 million. The fact that Robert individually agreed to pay $1 million to Maldonado does not convert the $1.3 million demand into a demand within policy limits. Moreover, Robert's agreement to pay $1 million was not effected until after Maldonado's offer expired. Maldonado's attorney, Boyd, made it clear at trial that he would not consider an agreement with Robert individually before the deadline had passed. After the deadline had passed and Maldonado and Robert had reached their agreement, Boyd stated he had no intention of accepting the policy limits. Indeed, when State Farm subsequently tendered its limits prior to trial, Boyd rejected the offer.

The only evidence of any demand made by Maldonado, therefore, is the demand for payment of $1.3 million. It does not matter whether the demand was first made orally on October 2, 1991, or whether it was not made until Boyd's letter of November 11, 1991. It also does not matter that Maldonado's attorney testified after the fact that he would have accepted $300,000 early in the case if State Farm had offered it.[6] The fact remains that Maldonado never made a demand within the policy limits. State Farm had no duty to respond to the demand in excess of policy limits; its failure to settle in response to that demand cannot be negligence. *See Soriano,* 881 S.W.2d at 314; *American Physicians Ins. Exchange v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994) (excess demand does not trigger *Stowers* duty).

Moreover, even were we to accept the majority's contention that Robert's offer to personally pay $1 million of the $1.3 million settlement demand somehow converted or reduced the settlement demand to $300,000, thereby triggering a duty under *Stowers,* we believe Justice Peeples, in the original panel

opinion in this case, accurately stated the reason Robert would still be unable to recover damages for a violation of the *Stowers* duty: the insurer is entitled to a reasonable time to evaluate offers to settle. The ultimate issue in any *Stowers* case is whether the settlement demand was reasonable under the circumstances. *See American Physicians Ins. Exchange v. Garcia,* 876 S.W.2d at 849. Assuming the $1.3 million offer became a $300,000 offer on the afternoon of November 14, when Leon convinced Robert to pay the $1 million, the offer expired at 5:00 p.m. on November 15. Even if we infer from the record that Leon contacted State Farm and informed it of Robert's intent to pay the $1 million when he arrived at Boyd's office on the morning on November 15, State Farm was then given only a few hours in which to respond to this "new" or "reduced" demand. As a matter of law, such a time constraint was not reasonable under the circumstances; therefore, State Farm was not negligent in failing to settle in response thereto.

## 2. NO EVIDENCE OF DAMAGES

Although the negligence action in the instant case was brought by Robert, rather than by Maldonado as Robert's assignee, the damage award in the underlying judgment should not be admissible as evidence in the instant case under the rule announced in *Gandy.* 925 S.W.2d at 711. The Court in *Gandy* held a judgment that does not result from a fully adversarial trial is not admissible in an action by a plaintiff as a defendant insured's assignee, disapproving its prior holding in *Block,* 744 S.W.2d at 943, i.e., that the insurer was barred from collaterally attacking the underlying judgment by litigating the reasonableness of the damages. *Id.* at 979. Permitting the defendant insured to use the judgment as evidence of damages raises the same concerns regarding collusion and distortion that arise where the judgment is used as evidence by the plaintiff as the defendant's assignee. The underlying judgment in the instant case did not result from a fully adversarial trial, and no mitigating evidence was presented therein. Therefore, the

---

**6.** The insurer does not bear the burden of making settlement offers. *American Physicians Ins.*

*Exchange v. Garcia,* 876 S.W.2d 842, 849 (Tex. 1994).

reliance by the trial court (and the majority) on the underlying judgment as evidence to compute the damages in the instant case was erroneous.

## CONCLUSION

The majority does a disservice to a well-reasoned opinion by a unanimous Texas Supreme Court by relegating the *Gandy* decision to a footnote. For the reasons expressed above, we would reverse the judgment of the trial court in its entirety and award Robert and Maldonado nothing. As to Maldonado, of course, by "nothing"—we mean nothing more than the $1 million she has already received from the now at-peace Robert.